1

2

3

4 **UNITED STATES DISTRICT COURT**

5 **DISTRICT OF NEVADA**

6

7 PHILLIP A. PITTENGER,    )
    )

8     Petitioner,    )       3:04-cv-0157-RCJ-RAM
    )

9 vs.    )
    )       **ORDER**

10 ATTORNEY GENERAL OF THE    )
STATE OF NEVADA, *et al.*,    )

11     )
    Respondents.    )

12     )

13 _____)

14     This action is a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254, by Phil

15 Pittenger, a Nevada prisoner.  The action comes before the court with respect to its merits.  The Court

16 will deny the petition.

17 **I.  Facts and Procedural Background**

18     A criminal complaint was filed against the petitioner in the Justice Court of Canal

19 Township on September 17, 1996, charging the petitioner with four counts of sexual assault on a child

20 under the age of sixteen.  Exhibit 1.[1]  Petitioner waived his right to a preliminary hearing.  Exhibit 3.

21 An information was filed in the Third Judicial District Court, charging petitioner with one count of

22 sexual assault on a child under the age of sixteen and one count of unlawful use of minors in producing

23 pornography.  Exhibit 4.  On November 25, 1996, petitioner entered into a guilty plea to the two charges.

24 Exhibits 6 and 8.  After canvassing the petitioner with respect to the plea, the court accepted the guilty

25

26     [1]  The exhibits cited in this order in the form "Exhibit ____," are those filed by respondents in support of their first motion to dismiss, and are located in the record in case 3:02-cv-0230-HDM-VPC (the original case number) at docket #14.

plea. *Id.* On February 10, 1997, the state district court sentenced petitioner to life imprisonment with parole eligibility in twenty years for count I, and to fifteen years in prison with parole eligibility in five years for count II. Exhibit 7. The sentences are to run concurrently. *Id.* A judgement of conviction was entered on February 13, 1997. Exhibits 9 and 10.

Petitioner appealed, arguing that the district court erred in arraigning the petitioner and accepting his plea without a written plea agreement as mandated by NRS 174.035(6). Exhibits 11 and 14. The Nevada Supreme Court dismissed the appeal. Exhibit 17. Remittitur issued on August 3, 1999. Exhibit 18. Petitioner then filed a state habeas corpus petition alleging six grounds for relief. Exhibit 20. Petitioner filed a supplement to the petition, adding one additional claim for consideration. Exhibit 24.

The state district court held an evidentiary hearing on the petition on October 30, 2000. Exhibit 26. After hearing testimony from the petitioner and defense trial counsel, the state district court dismissed the petition. Exhibits 26 and 27. Petitioner appealed, and the Nevada Supreme Court affirmed the lower court's dismissal. Exhibit 29. Remittitur issued on March 12, 2002. Exhibit 30.

Petitioner mailed a federal habeas corpus petition to this court in case 3:02-cv-0230-HDM-VPC.[2] Respondents moved to dismiss the petition, arguing several of the grounds were unexhausted.[3] This Court granted the motion to dismiss, finding portions of ground three were unexhausted.[4] The Court then granted petitioner's motion to voluntarily dismiss the action without prejudice.[5] On March 24, 2004, petitioner moved to reopen the case, and the Court granted the motion and reopened the case under the instant case number.[6]

Petitioner filed an amended petition with this court (docket #2). Respondents moved to

---

[2] Docket #7 of 3:02-cv-0230-HDM-VPC.

[3] Docket #13.

[4] Docket #23.

[5] Docket #25.

[6] Docket ## 26 and 27.

1   dismiss the petition, arguing the same grounds for relief remained unexhausted (docket #6).  This Court

2   granted the motion to dismiss, finding the grounds were still unexhausted and giving petitioner the

3   option of abandoning his claims or having the entire petition dismissed (docket #11).   Petitioner

4   abandoned the unexhausted grounds (docket #12).

5           Respondents then filed an answer to the petition (docket #19).  Petitioner filed a motion

6   to expand the record (docket #22) and a traverse (docket #25).   Petitioner then filed a notice of appeal

7   (docket #32), appealing this Court's order granting the motion to dismiss, and appealing the order

8   denying the motion to expand the record.  The Ninth Circuit Court of Appeals dismissed the appeal

9   (docket #42).  This Court will now rule upon the merits of petitioner's remaining habeas corpus claims.

10  **II.  Federal Habeas Corpus Standards**

11          The Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal

12  standard for the Court's consideration of this habeas petition:

13          An application for a writ of habeas corpus on behalf of a person in
        custody pursuant to the judgment of a State court shall not be granted
14      with respect to any claim that was adjudicated on the merits in State court
        proceedings unless the adjudication of the claim --
15
16      (1)   resulted in a decision that was contrary to, or involved an
        unreasonable application of, clearly established Federal law, as
        determined by the Supreme Court of the United States; or
17
18      (2)   resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the State
        court proceeding.
19

20  28 U.S.C. §2254(d).

21          The AEDPA "modified a federal habeas court's role in reviewing state prisoner

22  applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are

23  given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002).   A state court

24  decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C.

25  § 2254, "'if the state court applies a rule that contradicts the governing law set forth in [the Supreme

26  Court's] cases'" or "'if the state court confronts a set of facts that are materially indistinguishable from

3

a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent.'" *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694).

A state court decision is an unreasonable application of clearly established Supreme Court precedent "'if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The unreasonable application clause "requires the state court decision to be more than incorrect or erroneous"; the state court's application of clearly established law must be objectively unreasonable. *Id.* (*quoting Williams*, 529 U.S. at 409). *See also Ramirez v. Castro*, 365 F.3d 755 (9th Cir. 2004).

In determining whether a state court decision is contrary to, or an unreasonable application of, federal law, this Court looks to a state court's last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Plumlee v. Masto*, 512 F.3d 1204, 1209-10 (9th Cir. 2008) (en banc).

Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**III.  Discussion**

**A.  Grounds One and Two**

In his first ground for relief petitioner alleges that his guilty plea concerning count I was not entered knowingly and voluntary. Petitioner contends (1) that he is actually innocent of the crime of sexual assault and (2) that he did not understand the elements of sexual assault.

In the first portion of ground one petitioner asserts that he is actually innocent of the crime of sexual assault because (a) he was under the influence of drugs and alcohol, (b) he was an unwilling participant to the acts that constituted the sexual assault, (c) he was not sexually excited by the acts performed upon him by the children, (d) he did not willingly subject others to do anything, and

1   instead the children's parents subjected them to sexual penetration, and (e) the children were knowing

2   and willing participants.   In the second portion of ground one petitioner contends his plea was

3   involuntary because he was led to believe that the age of the victims was a factor in the crime, when it

4   fact it was not as the children knew and understood the nature of the acts they were performing.

5          In ground two petitioner alleges that his plea to count II was not knowingly or voluntarily

6   entered into because he is actually innocent.   Petitioner states that he did not commit the crime of

7   unlawful use of a minor in producing pornography as he did not operate the camera, instruct the

8   individuals on the tape about what to do, and instead, petitioner played no role in producing the video.

9          At the plea hearing petitioner told the court that he had discussed the information with

10   his attorney. Exhibit 6, T 3. Petitioner stated that he had discussed all of the facts and possible defenses

11   to the crimes with his attorney. *Id.*   Petitioner also told the court that he understood the nature of the

12   crimes and statutes. *Id.* at T 4.   The state read the elements of the offense. *Id.* at T 5.   The trial judge

13   then advised petitioner of the possible sentences he could receive if convicted of those crimes. *Id.* The

14   defendant indicated that he had no questions concerning the nature of the crimes or the possible

15   penalties. *Id.* at T 6.

16          Defense counsel and the state noted that by entering this plea the state would not charge

17   the petitioner with other sexual assault counts, and would present no witnesses or make an argument as

18   to the sentence. *Id.* at T 8.   Petitioner represented that no one had made him any other promises. *Id.* at

19   T 9.   Moreover, the court advised the petitioner that his sentence was solely up to the trial court, and that

20   no one could promise him any specific sentence. *Id.*   Petitioner told the court that he understood. *Id.*

21    The trial judge then went over the rights that petitioner was giving up by entering the plea. *Id.*

22   Petitioner stated that he understood the rights he was giving up, such as his presumption of innocence

23   and his right to have the state prove every element of each crime beyond a reasonable doubt. *Id.* at 10-

24   11. Petitioner then admitted to the sexual penetration of the children. *Id.* at T 12.   Moreover, petitioner

25   stated that he allowed the episode to be filmed. *Id.* at T 13.   The court accepted petitioner's guilty pleas.

26   *Id.*

1    The state district court held an evidentiary hearing on petitioner's claims on October 30,

2    2000.  Exhibit 26.  Petitioner testified that counsel did not discuss any defense with the petitioner

3    because the acts were caught on film.  *Id.* at T 6-7.  Petitioner told the court that during the plea colloquy

4    counsel told him what to say, in that counsel "coached" him through the hearing.  *Id.* at T 10.

5    Defense counsel Friedman testified that he discussed potential defenses that the petitioner

6    had to the charges.  *Id.* at 27.  Friedman stated that he met with the petitioner approximately seven or

7    eight times.  *Id.*  Counsel did have the petitioner psychologically evaluated.  *Id.* at T 28-29.  Friedman

8    testified that he discussed the role of the victims' ages, in that the victims' age made the charges and

9    penalties more severe.  *Id.* at T 42.  Counsel told the court that although he would give advice to a client

10   during a plea canvass, he would not tell a defendant to lie to the judge, or to answer a question

11   dishonestly.  *Id.* at T 44.

12   The Nevada Supreme Court addressed the instant claim, and found the state district

13   court's denial of the claim was proper.  The court stated:

14       In his petition, appellant claimed that his guilty pleas were
         unknowing and involuntarily entered because he was innocent.
15       Specifically, he contends that he was innocent of the crime of sexual assault
         on a minor under the age of sixteen because he was under the influence of
16       drugs when he committed the crime, he was not sexually excited by the
         acts, the victims were willing and knowing participants, and he did not
17       understand that age was not an element of sexual assault. He also claimed
         that he was innocent of the crime of the use of minors in producing
18       pornography because he was not the person responsible for producing
         pornography, he did not operate the camera, he did not give instructions to
19       the victims, he did not encourage or entice the victims to act, he was a
         passive observer, and he never made a factual admission to the crime.

20
         A guilty plea is presumptively valid and the petitioner has the
21       burden of establishing that the plea was not entered knowingly and
         intelligently. [fn 2: *See Bryant v. State*, 102 Nev. 268, 721 P.2d 364 (1986);
22       *see also Hubbard v. State*, 110 Nev. 671, 877 P.2d 519 (1994).] Further,
         this court will not reverse a district court's determination concerning the
23       validity of a plea absent an abuse of discretion. [fn 3: *See Hubbard*, 110
         Nev. At 675, 877 P.2d at 521.]
24
         Our review of the record reveals that the district court did not err in
25       denying these claims.  During the guilty plea canvass, the district court
         advised appellant of the elements of the offenses, the possible ranges of
26       sentences, that the sentences could be ordered to be served consecutively
         or concurrently, and that sentencing was determined solely by the court.

1    Appellant acknowledged that he understood.  Appellant was also informed
     of the constitutional rights he was waiving by pleading guilty, and of the
2    consequences of his guilty plea.   Appellant acknowledged that he
     understood.   Appellant also provided the district court with factual
3    admissions.  Thus, appellant failed to overcome the burden that his guilty
     plea was entered unknowingly or involuntarily.
4    Exhibit 29.

5          To satisfy the United States Constitution, a guilty plea must be voluntary and intelligent.

6    *See*, *e.g.*, *Hill v. Lockhart*, 474 U.S. 52 (1985); *Boykin v. Alabama*, 395 U.S. 238 (1969).  If a petitioner

7    challenges a guilty plea, a court must determine "whether the plea represents a voluntary and intelligent

8    choice among the alternative courses of action open to the defendant."  *North Carolina v. Alford*, 400

9    U.S. 25, 31 (1970).

10         Advice for a guilty plea does not require a description of every element of the offense.

11   *Bargas v. Burns*, 179 F.3d 1207, 1215-16 (9th Cir. 1999) (citation omitted).  The court looks to what

12   a defendant reasonably understood at the time of the plea.  *U.S. v. Quan*, 789 F.2d 711, 713 (9th Cir.

13   1986).  "A habeas petitioner bears the burden of establishing that his guilty plea was not voluntary and

14   knowing. *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006) (citations omitted).  Furthermore, "[a]

15   plea is voluntary [and intelligent] only if it is entered by one fully aware of the direct consequences of

16   his plea . . . ."  *Little* , 449 F.3d at 1080 (citing *United States v. Amador-Leal*, 276 F.3d 511, 514 (9th

17   Cir. 2002) (citation and internal quotations omitted)).

18         The Nevada Supreme Court's determination that these claims were without merit is not

19   objectively unreasonable.  Petitioner has not shown that his plea was involuntarily entered into.

20   Petitioner told the court at the plea hearing that he had discussed the facts of the case and all possible

21   defense, and that he understood the nature of the crimes.  The trial judge advised petitioner of the

22   potential sentences and the rights he would be giving up by entering a plea.  Moreover, defense counsel

23   and the state noted that petitioner was receiving a benefit by entering into the plea, in that the state would

24   not pursue several other sexual assault on a minor charges.  At the evidentiary hearing defense counsel

25   testified that he discussed any potential defenses with the petitioner, along with role the victims' ages

26   played in the charges.  It appears that the plea was voluntarily entered into, as petitioner and defense

7

1    counsel discussed his choices, possible defenses, and the potential penalties, and then the petitioner

2    chose to enter a plea in this case.

3              Furthermore, while petitioner argues that he is actually innocent of the charges, he cannot

4    establish factual innocence. Actual innocence is established when, in light of all of the evidence, "it is

5    more likely than not that no reasonable juror would have convicted [the petitioner]." *Bousley v. United*

6    *States*, 523 U.S. 614, 623 (1998) (quoting *Schlup*, 513 U.S. at 327-28)). The petitioner must establish

7    his factual innocence of the crime, and not mere legal insufficiency. *Id.*; *Jaramillo v. Stewart*, 340 F.3d

8    877, 882-83 (9th Cir. 2003). Petitioner admitted to the factual bases for both of the crimes.

9              The Court will deny grounds one and two.

10    **B. Ground Three**

11              In ground 3(a)[7] petitioner alleges that his plea was involuntarily and unknowingly entered

12    into because he believed that there was a strong possibility that he could receive probation for the

13    offenses. Petitioner also states that he believed that the trial court could not sentence him to more than

14    the minimum sentences for each crime.

15              The Nevada Supreme Court affirmed the state district court's denial of this claim on

16    appeal, finding:

17              Next, appellant claimed that his guilty plea was unknowingly and
         involuntarily entered because he was not informed by the court or by
18       counsel that the offenses that he was pleading guilty to were nonprobational
         [sic]. We conclude that the district court did not err in denying this claim.
19       Appellant's claim is not supported by the record. At the evidentiary
         hearing, appellant's trial counsel testified that he did advise appellant that
20       the offenses were nonprobational [sic]. Appellant was further advised in
         the guilty plea agreement that the offenses that he was pleading guilty to
21       were nonprobational [sic]. Specifically, the agreement stated, "I also
         understand that I am not eligible for probation." In addition, during the
22       plea canvas he was advised that for Count I he could be sentenced to life
         with the possibility of parole when a minimum of 20 years has been served,
23       or for a definite term of not less then 5 years nor more than 20 years with
         no possibility of parole. He was also advised that for Count II he could be
24       sentenced to life with the possibility of parole beginning when a minimum

25    _____

26              [7] Respondents labeled the first portion of ground three as (a). The remaining parts of ground
      three were unexhausted and petitioner abandoned those grounds.

                                                     8

1    of 5 years has been served or for a definite period of 15 years with the
     possibility of beginning when a minimum of 5 years had been served.
2    Also, at sentencing his attorney stated that "I know that you have to give
     him at least five years but he has already learned that jail is not where he
3    wants to be."  Considering the totality of the circumstances, the record
     reveals that appellant knew that his guilty plea would result in an actual
4    term of imprisonment. [fn 4: *See Little v. Warden*, 117 Nev. ___, 34 P.3d
     540 (2001).] Thus, appellant failed to demonstrate that his guilty plea was
5    entered unknowingly or involuntarily. [fn 5: *See State v. Freese*, 116 Nev.
     1097, 13 P.3d 442 (2000); *see also Bryant*, 102 Nev. 268, 721 P.2d 364.]
6

7    Exhibit 29.

8              The Nevada Supreme Court's determination is not objectively unreasonable.  A state

9    court's factual determination may not be overturned unless this court cannot "reasonably conclude that

10   the finding is supported by the record. *Cook v. Schriro*, 516 U.S. 802, 816 (9th Cir. 2008); *Miller-El v.*

11   *Cockrell*, 537 U.S. 32 (2003) (stating "[f]actual determinations by state courts are presumed correct

12   absent clear and convincing evidence to the contrary" and a decision made by a state court based upon

13   a factual determination "will not be overturned...unless objectively unreasonable in light of the evidence

14   presented in the state-court proceeding").

15             Furthermore, petitioner's claim is belied by the record.  During the plea canvass the trial

16   judge advised the petitioner that for count I he could be sentenced to life imprisonment with the

17   possibility of parole when a minimum of twenty years had been served, or for a definite term of not less

18   than five years, nor more than twenty years without the possibility of parole.  Exhibit 6, T 6.  The court

19   told petitioner that with respect to count II, he could be sentenced to a term of life imprisonment with

20   parole eligibility in five years, or for a definite term of fifteen years with parole eligibility after five

21   years. *Id.* at T 7.  The written plea agreement, which the petitioner signed, states that he understands that

22   he is not eligible for probation.  Exhibit 8.

23             At the evidentiary hearing petitioner told the state district court that counsel told him that

24   he would receive five or ten years in prison, and never mentioned that he could receive a life sentence.

25   Exhibit 26, T 6, 9.  Petitioner contended that he did not recall counsel telling him that probation was not

26   available. *Id.* at T 9. Petitioner did have a chance to read and discuss the plea agreement with counsel.

9

1    *Id.* at T 11.  Petitioner did recall the judge advising him of the potential penalties for count I.  *Id.* at T

2    17.  On cross-examination petitioner stated that he did not read the plea agreement, and did not see it

3    until after he was sentenced.  *Id.* at T 21.

4           Defense counsel Friedman testified that he went over the range of punishments that the

5    petitioner could face.  *Id.* at T 35.  Counsel did tell the petitioner he would receive a prison term.  *Id.* at

6    T 36.  Counsel also told petitioner that he could not receive probation for the crimes  *Id.* at T 36, 42.

7           Petitioner has not shown that his plea was involuntarily entered into.  Petitioner was

8    advised of the range of penalties he was facing, including the fact that he was not eligible for probation.

9    Moreover, the trial court told petitioner that it had the discretion to give him any sentence that fell within

10   the range set out in the statute.

11          The Court will deny ground three.

12        **C. Ground Four**

13          In his fourth ground for relief petitioner alleges that his Sixth and Fourteenth Amendment

14   rights to effective assistance of counsel were violated because trial counsel (1) was ineffective for

15   advising him to enter into a plea to crimes he did not commit, (2) failed to inform him of the

16   consequences of his plea, and (3) was ineffective for failing to prepare a written plea agreement prior

17   to arraignment.

18          In order to prove ineffective assistance of counsel, petitioner must show (1) that counsel

19   acted deficiently, in that his attorney made errors so serious that his actions were outside the scope of

20   professionally competent assistance and (2) the deficient performance prejudiced the outcome of the

21   proceeding.  *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984).  In the case of a guilty plea a

22   petitioner must demonstrate that "but for counsel's errors, he would not have pleaded guilty and instead

23   would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

24          Ineffective assistance of counsel under *Strickland* requires a showing of deficient

25   performance of counsel resulting in prejudice, "with performance being measured against an 'objective

26   standard of reasonableness,' . . . 'under prevailing professional norms.'" *Rompilla v. Beard,* 545 U.S.

10

1   374, 380 (2005) (quotations omitted).  If the state court has already rejected an ineffective assistance

2   claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable

3   application of the *Strickland* standard.  *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003).  There is a

4   strong presumption that counsel's conduct falls within the wide range of reasonable professional

5   assistance.  *Id.*

6   **1.  Counsel's Ineffectiveness for Advising Petitioner to Enter a Plea**

7   Petitioner contends trial counsel was ineffective for advising him to enter a guilty plea

8   to crimes that he did not commit.  Petitioner states that counsel failed to accurately inform him of the

9   elements of the crimes he was charged with, and was led to believe he was guilty when he was in

10  innocent of the crimes charged.

11  The Nevada Supreme Court rejected this claim, finding that defense counsel discussed

12  the crimes with the petitioner, including the possible sentences and the elements of the offenses.  Exhibit

13  29.  Moreover, the Nevada Supreme Court noted that counsel discussed possible defenses to the crimes.

14  *Id.* Finally, the court stated that during the plea canvass petitioner was informed of the elements of the

15  offenses, and had indicated to the trial court that he had discussed the offenses, penalties, and defenses

16  with counsel.  *Id.*

17  The Nevada Supreme Court's determination is not an objectively unreasonable

18  application of *Strickland* and *Hill*.  Moreover, this Court cannot overturn the state court's factual

19  determination unless the Court cannot conclude that the finding is supported by the record.  *Cook*, 516

20  F.3d at 816; *Miller-El v. Cockrell*, 537 U.S. at 32.  At the plea hearing the petitioner told the court he

21  had discussed the charges with counsel, and any possible defenses, and understood the nature of the

22  crimes.  Exhibit 6.  The court also discussed the rights petitioner was giving up by entering the plea.

23  Moreover, petitioner admitted to the factual basis for the charges.  At the evidentiary hearing counsel

24  testified that he discussed the charges, their elements, and any possible defenses.  Exhibit 26.

25  Furthermore, as was discussed in relation to grounds one and two, petitioner cannot show that he is

26  factually innocent of these crimes.

11

1    The Court will deny this part of ground four, as petitioner has not shown that counsel

2    acted deficiently, in that counsel did discuss the elements of the crimes with the petitioner and advised

3    the petitioner of any defenses to the crimes.

4                    **2. Failure to Inform Petitioner of the Consequences of the Plea**

5    In this portion of ground four petitioner argues that trial counsel was ineffective for

6    failing to inform him of the consequences of his plea.  Specifically petitioner contends that counsel did

7    not tell him that probation was not available and that he could receive a life sentence.

8    The Nevada Supreme Court affirmed the state district court's denial of this claim, finding

9    that counsel did advise petitioner of the potential sentences he could receive. Exhibit 29.  Moreover, the

10   court found that petitioner was advised of the potential sentences for the crimes charged during the plea

11   canvass.  *Id.*

12   The Nevada Supreme Court's determination is not objectively unreasonable.  As this

13   Court previously noted in relation to ground three, petitioner was advised of the potential sentences he

14   could receive, including life sentences, during the plea canvass.  Exhibit 6.  The written plea agreement

15   noted that petitioner was not eligible for probation.  Exhibit 8.  Moreover, counsel testified at the

16   evidentiary hearing that he discussed the range of sentences, and did tell petitioner that he could not

17   receive probation.  Exhibit 26.

18   Petitioner has not shown that trial counsel was ineffective, as counsel did advise the

19   petitioner of the potential sentences and told petitioner he could receive a life sentence.  The Nevada

20   Supreme Court's factual determination that counsel did not act deficiently is supported by the record.

21   The Court will deny this portion of ground four.

22                    **3. Failure to Prepare a Plea Agreement Prior to Arraignment**

23   In the final subclaim list in ground four, petitioner alleges that trial counsel was

24   ineffective for failing to prepare a written plea agreement prior to the plea hearing/arraignment.

25   Petitioner contends that counsel did not inform him of the terms of the plea agreement, therefore he was

26   unaware of the specific terms of the agreement.

1       Defense counsel did not prepare a written plea agreement prior to the plea hearing.

2   Exhibit 6.  However, a written plea agreement was prepared prior to sentencing, and was signed by the

3   petitioner.  Exhibit 8.

4       The Nevada Supreme Court determined this claim was without merit, stating:

5           Next, appellant claimed that his counsel was ineffective during the
        arraignment because he failed to prepare a written guilty plea agreement for
6       the arraignment and failed to discuss the terms of the agreement with
        appellant.  Appellant claimed that had his attorney prepared a written guilty
7       plea agreement appellant would have known the consequences of his plea
        and that probation was not available.  We conclude that the district court
8       did not err in denying this claim.  Failure to have a written guilty plea
        agreement prepared is not per se reversible error. [fn 10: *See Ochoa-Lopez*
9       *v. Warden*, 116 Nev. 448, 997 P.2d 136 (2000).] As discussed earlier in this
        order, considering the totality of the circumstances, appellant's guilty plea
10      was valid.  Moreover, appellant was not prejudiced by counsel's actions
        because in return for appellant's guilty plea other charges were dismissed;
11      thus, appellant failed to show that but for counsel's error he would not have
        pleaded guilty and would have proceeded to trial. [fn 11: *See Kirksey*, 112
12      Nev. At 987-88, 923 P.2d at 1107.] Thus, appellant's counsel was not
        ineffective in this regard.

13

14  Exhibit 29.  The Nevada statutes state:

15          A defendant may not enter a plea of guilty... pursuant to a plea bargain for
        an offense punishable as a felony for which:
16
            (a) Probation is not allowed; or
17
            (b) The maximum prison sentence is more than 10 years,
18
        unless the plea bargain is set forth in writing and signed by the defendant,
19      the defendant's attorney, if he is represented by counsel, and the
        prosecuting attorney.
20

21  NRS 174.035 (7).

22      The Nevada Supreme Court's conclusion that petitioner's claim was without merit is not

23  an objectively unreasonable application of *Strickland* or *Hill*.  As this Court has previously discussed,

24  petitioner was aware of the terms of the plea agreement.  Petitioner had discussed the charges, defenses,

25  possible sentences and consequences with counsel.  Moreover, the trial court discussed the charges,

26  potential sentences, and the rights petitioner was giving up at the plea hearing.  Finally, petitioner did

13

1   sign a written plea agreement, however, not before the plea hearing.  However, the Nevada Supreme

2   Court determined that pursuant to Nevada law, this was not per se reversible error.  This court defers to

3   the Nevada Supreme Court's ruling on its own state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68

4   (1991) (stating "federal habeas corpus does not lie for errors of state law").

5      The Court will deny this part of ground four.  Petitioner has not shown that counsel's

6   failure to provide a written plea agreement before the plea hearing prejudiced the outcome of this case,

7   in that petitioner would have insisted on going to trial instead of entering the plea.  Petitioner was aware

8   of the terms of the plea agreement although he did not sign a written agreement until after the plea

9   colloquy.

10     **D.  Ground Five**

11      In his fifth ground for relief petitioner alleges that his Fifth and Fourteenth Amendment

12   rights were violated due to prosecutorial misconduct.  Petitioner states that the prosecutor committed

13   gross misconduct when he charged petitioner with sexual assault and unlawful use of a minor in

14   producing pornography, as he was innocent and the state charged the victims' parents with these same

15   crimes.  Moreover, petitioner points to the prosecutor's attempt to allegedly breach the plea agreement

16   at sentencing.

17      Respondents argue that this ground was procedurally defaulted in the state courts.

18     **1. Procedural Default Principles**

19      Generally, in order for a federal court to review a habeas corpus claim, the claim must

20   be both exhausted and not procedurally barred.  *Koerner v. Grigas,* 328 F.3d 1039, 1046 (9th Cir. 2003).

21   Procedural default refers to the situation where a petitioner in fact presented a claim to the state courts

22   but the state courts disposed of the claim on procedural grounds rather than denying the claim on the

23   merits.  A federal court will not review a claim for habeas corpus relief if the decision of the state court

24   regarding that claim rested on a state law ground that is independent of the federal question and adequate

25   to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).  The *Coleman* Court

26   stated the effect of a procedural default as follows:

14

1
2
3
4

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

5    *Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).  The procedural

6    default doctrine ensures that the state's interest in correcting its own mistakes is respected in all federal

7    habeas cases.  *See Koerner*, 328 F.3d at 1046.

8                    **2.  Procedural Default in the State Court**

9            Respondents argue that ground five was procedurally defaulted in the state court.  On

10   appeal, the Nevada Supreme Court addressed the instant claim, stating:

11
12
13
14
15
16

> Lastly, appellant claimed that the prosecutor committed "gross misconduct" by (1) charging him with these crimes because appellant was legally innocent; (2) attempting to breach the plea agreement; and (3) charging other participants with the same crimes.  We conclude that the district court did not err in denying these claims.  Appellant waived these claims by failing to raise them on direct appeal. [fn 13: *See Franklin v. State*, 110 Nev. 750, 877 P.2d 1058 (1994) *overruled on other grounds by Thomas v. State*, 115 Nev. 148, 979 P.2d 222 (1999).] Moreover, these claims are outside the scope of claims that can be raised in a post-conviction petition for a writ of habeas corpus when the judgment of conviction is based upon a guilty plea. [fn 14: *See* NRS 34.810(1)(a).]

17   Exhibit 29.

18           It appears that this claim was procedurally defaulted in the state court, as the Nevada

19   Supreme Court found the claim was waived and that it could not be raised in state habeas corpus petition

20   as the petitioner entered into a guilty plea.

21                    **3. The Procedural Default Was an Independent and Adequate State Law Ground
22                    for the Nevada Supreme Court's Disposition of Petitioner's Claims**

23           For the procedural default doctrine to apply, "a state rule must be clear, consistently

24   applied, and well-established at the time of the petitioner's purported default." *Wells v. Maass*, 28 F.3d

25   1005, 1010 (9th Cir. 1994).  *See also Calderon v. United States District Court (Bean)*, 96 F.3d 1126,

26   1129 (9th Cir. 1996).

1    NRS 34.810 has been held to be an independent and adequate state procedural rule that

2  will bar federal review.  *See Vang v. Nevada*, 329 F.3d 1069, 1074-75 (9th Cir. 2003); *Bargas v. Burns*,

3  179 F.3d 1207 (9th Cir. 1999).  However, NRS 34.810(1)(a) clearly states that a court can dismiss a

4  habeas petition if the petitioner entered a guilty plea and "the petition is not based upon an allegation

5  that the *plea was involuntary or unknowingly entered*."  (emphasis added).  While in other portions of

6  the federal habeas petition the petitioner does allege that his plea was involuntary and unknowing,

7  petitioner's fifth ground for relief does not allege that his plea was rendered involuntary or unknowing

8  due to the prosecutor's alleged misconduct.  Furthermore, the Nevada Supreme Court also found the

9  claim was waived for failure to raise it on direct appeal.

10    This court finds that the Nevada Supreme Court's determination that ground five was

11  procedurally barred under NRS 34.810 was an independent and adequate ground for the court's denial

12  of the state habeas petition.

13    **4. Cause and Prejudice or Fundamental Miscarriage of Justice**

14    To overcome a procedural default, a petitioner must establish either (1) "cause for the

15  default and prejudice attributable thereto," or (2) "that failure to consider [his defaulted] claim[s] will

16  result in a fundamental miscarriage of justice."  *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations

17  omitted).  Cause to excuse a procedural default exists if a petitioner can demonstrate that some objective

18  factor external to the defense impeded the petitioner's efforts to comply with the state procedural rule.

19  *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  The

20  prejudice that is required as part of the showing of cause and prejudice to overcome a procedural default

21  is "actual harm resulting from the alleged error."  *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998);

22  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984).

23    Petitioner does not make any arguments relating to cause and prejudice for the procedural

24  default.  The Court will deny this claim as procedurally defaulted.

25    **E.  Ground Six**

26    In his sixth and final claim petitioner alleges that his Sixth Amendment rights to the

16

effective assistance of counsel were violated when (1) counsel failed to properly prepare him for the sentencing hearing and (2) failed to call witnesses to testify at the sentencing hearing.

### 1. Failure to Prepare Petitioner for Sentencing

In this portion of ground six petitioner asserts that trial counsel failed to prepare him to speak to the trial court judge. Petitioner states that counsel had a duty to prepare him to speak with the judge in a clear and logical manner. Moreover, petitioner contends that the judge may have interpreted petitioner's rambling statements as an attempt to shift the blame for the crimes.

The Nevada Supreme Court affirmed the denial of this claim, finding trial counsel was not ineffective. Exhibit 29. The court's determination is not an objectively unreasonable application of *Strickland* and *Hill*, as petitioner cannot show that counsel acted deficiently in this case. Defense counsel testified at the evidentiary hearing that he talked to the petitioner prior to sentencing about what he should say to the trial judge, and counsel told petitioner he should not say anything. Exhibit 26, T 46. Counsel stated he had recommended that the petitioner not talk at sentencing, and he was surprised by what the petitioner did say to the judge. *Id.*

The Court will deny this portion of ground six, as petitioner has not shown that trial counsel acted ineffectively. Counsel did talk to petitioner prior to sentencing about what he would say to the judge, and advised petitioner not to give a statement. Petitioner ignored counsel's advice and spoke the court anyway. The court noted that whether the petitioner was "led into" committing the crimes, and whether the children were led into performing sexual acts, the crimes still were committed. Exhibit 6, T 54. There is no indication that counsel failed to prepare the petitioner for sentencing, and even if counsel did, petitioner has not shown that what petitioner told the court at sentencing prejudiced the outcome of this case.

### 2. Failure to Call Witnesses at Sentencing

In his second portion of ground six petitioner contends that trial counsel was ineffective for failing to have one or two of the teachers that wrote letters on his behalf testify at sentencing. Petitioner, a custodian at a school, alleges that these individuals had observed the petitioner in their

1 personal and professional capacity and their testimony concerning the petitioner would have been

2 considered by the trial court.

3          At sentencing defense counsel proffered letters written by teachers and personnel at the

4 school where the petitioner worked. Exhibit 6. These witnesses did not testify at the sentencing hearing.

5 At the evidentiary hearing defense counsel Friedman testified that he may have asked some of the

6 witnesses to testify but they chose not to be present at sentencing. Exhibit 26, T 48. Petitioner also

7 noted that if the teachers had indicated they did not want to testify he would not have subpoenaed them

8 because he wanted only favorable testimony from those witnesses. *Id.* Counsel stated that the teachers

9 became less and less willing to testify in court as the case went on, and was publicized. *Id.* at T 49.

10          Counsel told the court that his sentencing strategy was to rely on the petitioner's lack of

11 criminal history and the doctor's testimony about petitioner's low IQ and personality that was easily

12 influenced. *Id.* Moreover, counsel relied on the letters provided by the teachers, which he thought

13 would carry a lot of weight. *Id.*

14          The Nevada Supreme Court addressed this claim on appeal, and affirmed the lower

15 court's denial, stating:

16          We conclude that the district court did not err in denying these
          claims. Appellant's trial counsel stated that he submitted letters written on
17        appellant's behalf to the court for its consideration during sentencing. Trial
          counsel also testified that he attempted to have witnesses testify on
18        appellant's behalf at the sentencing hearing, however, none of the potential
          witnesses wanted to get involved. Therefore, appellant failed to
19        demonstrate that his counsel [sic] performance was unreasonable in this
          regard.

20

21 Exhibit 29 (footnote omitted). The Nevada Supreme Court's determination was not objectively

22 unreasonable. Petitioner has not shown that trial counsel acted deficiently, as counsel attempted to

23 present witnesses at sentencing, but the teachers were reluctant to testify and instead sent letters. The

24 Nevada Supreme Court's finding that counsel did not act deficiently is supported by the record. *Cook*

25 *v. Schriro*, 516 U.S. 802, 816 (9th Cir. 2008); *Miller-El v. Cockrell*, 537 U.S. 32 (2003).

26

18

1      Furthermore, the United States Supreme Court has noted that "strategic choices made

2  after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."

3  *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).  "Whether counsel's actions constituted a

4  'tactical' decision is a question of fact, and...[a court] must decide whether the state court made an

5  unreasonable determination of the facts in light of the evidence before it."  *Pinholster v. Ayers*, 525 F.3d

6  742 (9th Cir. 2008) (citing *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc); *Taylor

7  v. Maddox*, 366 F.3d 992, 999-1000 (9th Cir. 2004)).  There is no indication that counsel's strategy (of

8  relying on the petitioner's lack of criminal history, expert testimony and letters from teachers) at

9  sentencing was unreasonable.

10      The Court will deny ground six.

11  **IV.  Certificate of Appealability**

12      In order to proceed with an appeal from this court, petitioner must receive a certificate

13  of appealability.  28 U.S.C. § 2253(c)(1).  Generally, a petitioner must make "a substantial showing of

14  the denial of a constitutional right" to warrant a certificate of appealability.  *Id.*  The Supreme Court has

15  held that a petitioner "must demonstrate that reasonable jurists would find the district court's assessment

16  of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

17      The Supreme Court further illuminated the standard for issuance of a certificate of

18  appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  The Court stated in that case:

19              We do not require petitioner to prove, before the issuance of a COA, that
               some jurists would grant the petition for habeas corpus.  Indeed, a claim
20              can be debatable even though every jurist of reason might agree, after the
               COA has been granted and the case has received full consideration, that
21              petitioner will not prevail. As we stated in *Slack*, "[w]here a district court
               has rejected the constitutional claims on the merits, the showing required
22              to satisfy § 2253(c) is straightforward: The petitioner must demonstrate
               that reasonable jurists would find the district court's assessment of the
23              constitutional claims debatable or wrong."

24  *Id.* at 1040 (quoting *Slack*, 529 U.S. at 484).

25      The Court has considered the issues raised by petitioner, with respect to whether they

26  satisfy the standard for issuance of a certificate of appeal, and the Court determines that none meet that

19

1  standard.  Accordingly, the Court will deny petitioner a certificate of appealability.

2          **IT IS THEREFORE ORDERED** that the amended petition for writ of habeas corpus

3  (docket #2) is **DENIED**.

4          **IT IS FURTHER ORDERED** that the clerk shall **ENTER JUDGMENT**

5  **ACCORDINGLY**.

6          **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

7  **APPEALABILITY**.

8

9          Dated this 26th day of March, 2009.

10

11                                        _____

12                                        UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26  (da-p2)

20